

-PS-O-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BAKEIM MCCALL,

        Plaintiff,

    -v-                                    14-CV-0258A
                                            ORDER

Z. CICCONI-CROZIER, PETER BRASELIMANN, M.D.,
JANE DOE, and JANE DOE #2,[1]

        Defendants.
_____

## PROCEDURAL BACKGROUND

Plaintiff, Bakeim McCall, an inmate currently incarcerated at the Riverview Correctional Facility, filed this action against former defendant Elmira Correctional Facility ("Elmira C.F.") Medical Staff in the United States District Court, Northern District of New York, and the action was later transferred to this District because plaintiff had named as defendants only the unidentified medical staff at Elmira C.F., and Elmira C.F. is located within this District. (See Docket No. 7, Order Transferring Case.)

This Court granted plaintiff permission to proceed *in forma pauperis* and, upon review of the complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 19815A(b), the Court dismissed the complaint against the sole defendant, Elmira C.F. Medical Staff, but provided plaintiff leave to file an amended complaint that both (1) named as defendants those individuals whom plaintiff alleged were personally involved in the denial of adequate

---

[1] Plaintiff appears to sue two Jane Doe Nurses herein and the body of the complaint refers to them as "Jane Doe" and a "Jane Doe #2". The Clerk of the Court is directed to amend the official caption of this action as reflected herein.

medical attention, and (2) sets forth sufficient facts to state a claim against the individuals named as defendants. (Docket No. 9, Decision and Order, at 3-6.) The *pro se* complaint was silent with respect to what the allegations against the unidentified members of the Elmira C.F. Medical Staff were. The complaint had noted only that plaintiff had filed grievances with the Central Office in Albany and that one grievance was denied and two others had been pending for months. The complaint also noted that plaintiff had complained to "medical staff" at Elmira C.F. and that the results of such complaints was "inadequate medical attention." (*Id.* at 4 (citing Docket No. 1, Complaint, ¶ 4(c).)

Plaintiff filed an amended complaint naming as defendants Nurse Administrator Z. Cicconi-Crozier, Dr. Peter Braselimann, Jane Doe, RN, and Jane Doe #2, Sick Call Nurse, C-Block (Docket No. 15), and a motion for appointment of counsel (Docket No. 16). For the reasons set forth below, the summons and amended complaint will be directed to be served upon defendants Cicconi-Crozier and Dr. Braselimann, the New York State Attorney General's Office will be requested to ascertain the identities of the two Jane Doe Nurses, and the motion for appointment of counsel is denied without prejudice.

## DISCUSSION

Sections 1915(e)(2)(B) and 1915A(a) of 28 U.S.C. require the Court to conduct an initial screening of this amended complaint. In evaluating the amended complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). While "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v.*

*McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon,* 360 F.3d 73 (2d Cir. 2004). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). In order to state a claim sufficient to survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6),"a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d. Cir. 1997) (citing *Eagleston v. Guido,* 41 F.3d 865, 875-76 (2d Cir.1994)).

### A. Plaintiff's Claims

The amended complaint alleges four separate claims against four separate defendants. Each claim alleges a denial of adequate medical treatment in violation of the Eighth Amendment to the United States Constitution.

The First Claim alleges that on August 10, 2012, plaintiff complained to defendant Dr. Braselimann and "clearly explained" that he "felt like [he] was going to die!"

3

Dr. Braselimann did nothing to help plaintiff and sent plaintiff to the Facility's Mental Health Unit. (Amended Complaint, Section 5A, First Claim, at 5.)

The Second Claim alleges that between September 2012 and April 2013, he was seen by defendant Jane Doe, RN, on numerous occasions and he explained to her that his "head and body [were] going thr[ough] the same problems that [he] kept complaining about and it ha[d] worsene[ed]." Jane Doe, RN, advised him that he was experiencing anxiety and prescribed him anti-anxiety medication. After a few months he again complained that he was suffering from the same problems and Jane Doe, RN, doubled the dosage of the anti-anxiety medication. He claims he was on the medication for one and one-half years. (*Id.*, Section 5B, Second Claim, at 5-6.)

The Third Claim alleges that between August 10, 2012 and August 2013, plaintiff wrote to the Nurse Administrator, presumably defendant Cicconi-Crozier, numerous times complaining about his heart and telling her that "he was [scared] for [his] life and that [he] didn't want to die." Plaintiff also requested to be seen by an outside doctor, a neurologist, but she denied his request and "insisted that [he] keep utilizing the sick call [procedure]." (Complaint, Section 5A, Third Claim (attached to Form Complaint), at 8.)

The Fourth Claim alleges that between July 15, 2012 and January 9, 2013, he signed up for sick call numerous times and explained to defendant Jane Doe #2, the Sick Call Nurse on C-Block, his "condition" and she "ridiculed [him]" and told him that the symptoms he was experiencing were "in his head." He claims that he needed to be examined by a neurologist but Jane Doe #2 insisted that he take Ibuprofen. (*Id.*, Section 5A, Fourth Claim, at 8-9.)

Plaintiff attached to the amended complaint a copy of a Radiology Report from the Upstate University Hospital of a Brain MRI he underwent on May 6, 2014. The "Indication" states the plaintiff complained of "headache, blurred vision, dizziness, unsteady gait for 3-4 months. Progressive, nausea but no vomiting." The "Impression" states: "Nonenhancing lesion within the right pons as described. The most likely consideration includes a demyelinating lesion (e.g. multiple sclerosis). An alternative, but less likely consideration includes a previous infectious process. Clinical correlation and follow up imaging to confirm stability are recommended." (Amended Complaint, at 14.)[2] Other documents attached to the complaint include a memorandum from Elmira C.F.'s Deputy Superintendent for Administrative Services, dated April 9, 2013, stating in response to a letter from plaintiff that, after consultation with a doctor at Elmira C.F., the doctor "feels that a neurological consult is not recommended" and that plaintiff has been seen by a primary care physician. Plaintiff was advised that if he wished to see a neurologist, he could, but at his own expense. (*Id.*, at 15.)

A claim for denial of medical care rises to the level of a constitutional violation only where the facts alleged show that a defendant was deliberately indifferent to a plaintiff's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291, 50 L. Ed.2d 251 (1976); *Ross v. Kelly*, 784 F. Supp. 35, 43-44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040, 113 S. Ct. 828, 121 L. Ed.2d 698 (1992). This standard has both an objective and subjective component. Plaintiff's medical needs must

---

[2]See *Chance v. Armstrong*, 143 F.3d 698, 698 n.1 (2d Cir. 1998) ("[T]he court may consider facts set forth in exhibits attached as part of the complaint as well as those in the formal complaint itself."); *see also Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference").

be objectively serious. "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted)). In *Harrison*, the Second Circuit pointed out that

> [medical] conditions ... vary in severity and ... a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case. Thus, a prisoner with a hang-nail has no constitutional right to treatment, but if prison officials deliberately ignore an infected gash, "the failure to provide appropriate treatment might well violate the Eighth Amendment."

*Id.* (quoting *Chance*, 143 F.3d at 702). *Compare Chance* (finding serious dental need where plaintiff alleged that he suffered extreme pain, his teeth deteriorated, and he had been unable to eat properly) and *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (deprivations of needed eyeglasses may produce consequences that "adequately meet the test of 'suffering' [under] *Gamble*"), *with Banks v. Mannoia*, 890 F. Supp. 95, 99 (N.D.N.Y. 1995) ("The serious medical need requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain").

Given the situation described by plaintiff in the amended complaint, which itself does not set forth in any specific manner the symptoms plaintiff complained of, and the MRI Report, which sets forth the specific symptoms plaintiff claimed he had been experiencing and states that the radiologist's Impression was "most likely ... a demyelinating lesion (e.g.,

6

multiple sclerosis)," the Court finds that plaintiff, at this stage in the litigation, has alleged a serious medical need.[3]

For plaintiff's claims to survive this initial review, however, he must also address the subjective component--that the prison officials were deliberately indifferent to this need. Plaintiff must adequately allege that the prison official had actual knowledge of plaintiff's serious medical needs, but was deliberately indifferent. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Brock v. Wright*, 315 F.3d 158 (2d Cir. 2003); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.2d 178, 184 (2d Cir. 2003). Mere disagreement over the proper treatment does not create a constitutional claim because prison officials have broad discretion in determining the type and extent of medical treatment given to inmates, *Thomas v. Pate*, 493 F.2d 151, 157 (7th Cir. 1974), *cert. denied*, 423 U.S. 877 (1975). Thus a court cannot impose the same standards of medical care upon a prison as it would expect from a hospital. *See, e.g., Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) (a "correctional facility is not a health spa, but a prison in which convicted felons are incarcerated;" so long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation). An isolated failure to provide medical treatment, without more, is generally not actionable unless "the surrounding circumstances suggest a degree of

---

[3] In light of the procedural posture of this case, initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the recitation of facts is drawn exclusively from plaintiff's amended complaint and the documents attached thereto, the contents of which must be accepted as true for purposes of this review. *See Erickson v. Pardus*, 551 U.S. 93-94 (citing *Bell Atlantic Corp.*, 550 U.S. at 555-56).

deliberateness, rather than inadvertence, in the failure to render meaningful treatment." *Gil v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

Furthermore, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim. *See Estelle*, 429 U.S. at 105-06. At the same time, however, "while 'mere medical malpractice' is not tantamount to deliberate indifference, certain instances of medical malpractice may rise to the level of deliberate indifference; namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Hathaway*, 99 F.3d at 553 (citation omitted). Thus, in certain instances a physician may be deliberately indifferent if he or she consciously chooses "an easier and less efficacious" treatment plan. *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974) (holding that where plaintiff alleged that the prison doctors chose simply to close a wound caused by the severing of his ear rather than attempting to reattach the organ, such treatment could constitute deliberate indifference rather than a mere difference of opinion over a matter of medical judgment); *see also Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (reaffirming position that "choice of an easier but less efficacious course of treatment can constitute deliberate indifference").

Plaintiff's allegations, while conclusory, do assert that he frequently complained to defendants and that they did not take him and his symptoms seriously. He was told that the symptoms were "in his head" and he was "ridiculed" by Jane Doe #2, who simply prescribed him Ibuprofen. Construing the amended complaint and the attached documents liberally, as the Court must, the Court cannot say at this preliminary stage in the litigation

that the claims are not plausible on their face.[4] *See Ashcroft*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotations and citation omitted). The amended complaint will, therefore, be directed to be served upon defendants Cicconi-Crozier and Dr. Braselimann.

### B. Motion for Appointment of Counsel

Plaintiff's motion states that he is requesting legal representation from the Court and that he has written to numerous law firms, each of which have declined to represent him. (Docket No. 16).

A more fully developed record will be necessary before the Court can determine whether plaintiff's chances of success warrant the appointment of counsel. Therefore, plaintiff's motion is denied without prejudice to its renewal at such time as the existence of a potentially meritorious claim may be demonstrated. *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (when determining whether to appoint counsel, the Court must first look to the "likelihood of merit" of the underlying dispute).

---

[4] *See, e.g., McEachin v. McGuiniss*, 357 F.3d 197, 200 (2d Cir. 2004) ("We have frequently reiterated that '[s]ua *sponte* dismissals of *pro se* prisoner petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by this Court.' ") (quoting *Moorish Sci. Temple of Am. Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982)); *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (*per curiam*) ("*Sua sponte* dismissal of a *pro se* complaint prior to service of process is a draconian device, which is warranted only when the complaint lacks an arguable basis in law or fact. Where a colorable claim is made out, dismissal is improper prior to service of process and the defendants' answer.") (citations and internal quotations omitted)).
In allowing these claims to proceed and directing a response to them, the Court expresses no opinion as to whether plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### C. Jane Doe and Jane Doe #2, Nurses

The Court requests that the New York State Attorney General's Office ascertain the names and proper addresses for Jane Doe, Nurse, Elmira C.F., and Jane Doe #2, Sick Call Nurse, C-Block, Elmira C.F., pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d. Cir. 1997) (per curiam). The Attorney General's Office need not undertake to defend or indemnify these individuals at this juncture. This order merely provides a means by which plaintiff may name and properly serve the Jane Doe defendants as instructed by the Second Circuit in *Valentin*.

### ORDER

IT IS HEREBY ORDERED that the Clerk of the Court is directed to cause the United States Marshals Service to serve copies of the Summons, Amended Complaint, and this Order upon defendants Peter Braselimann, Dr., and Z. Cicconi-Crozier, Nurse Administrator, at the Elmira Correctional Facility without plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;[5]

FURTHER, that the New York State Attorney General's Office is hereby requested to produce the information specified above regarding the names and proper addresses at which to serve Jane Doe, Nurse, Elmira C.F., and Jane Doe #2, Sick Call Nurse, C-Block, Elmira C.F., to the Court's Pro Se Office (Buffalo) by **June 11, 2015**. Once this information

---

[5]Pursuant to a Standing Order of Court, filed September 28, 2012, a defendant will have 60 days to file and serve an answer or other responsive pleading, *see* Fed.R.Civ.P. 12(a)-(b), if the defendant and/or the defendant's agent has returned an Acknowledgment of Receipt of Service by Mail Form within 30 days of receipt of the summons and complaint by mail pursuant to N.Y.C.P.L.R. § 312-a.

is provided amended summonses shall be issued and the Court shall direct service on the identified defendants;

FURTHER, that the Clerk of the Court is also directed to forward a copy of this Order by email to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office <Michael.Russo@ag.ny.gov>;

FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to answer the amended complaint; and

FURTHER, that plaintiff's motion for the appointment of counsel is denied without prejudice

SO ORDERED.

DATED: 5/6, 2015
Buffalo, New York

JOHN T. CURTIN
United States District Judge

11